UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GRANT WILLIAMS, a/k/a/ WALTER FRANKLIN,

                           Petitioner,                    06 Civ. 0044 (RPP)

             - against -                     **OPINION AND ORDER**

ROBERT E. ERCOLE, Superintendent,

                         Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      On December 8, 2005, Grant Williams ("Petitioner") brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his imprisonment due to a conviction for Robbery in the Second Degree under § 160.10(1) of the New York Penal Law following a plea of guilty entered in New York State Supreme Court, New York County on April 9, 1998.[1] In his pro se petition, Petitioner alleges that his right to due process under the Fourteenth Amendment of the United States Constitution was violated when, after a Wade-Huntley-Mapp hearing, the state court failed to suppress a show-up identification of Petitioner – who was handcuffed and surrounded by police officers at the time – by complainant Mark Kosakiewicz, after another witness had already identified Petitioner and Petitioner had been arrested. (Pet'r Mem. of Law in Supp. of his Mot. Pursuant to 28 U.S.C. § 2254 ("Pet'r Mem.") 1.)

---

[1] Petitioner delivered the petition to prison authorities to be mailed on Dec. 8, 2005, less than one year from the date his conviction became final on Dec. 20, 2004. (Decl. by Michelle Maerov, Esq. in Opp'n to Pet. for a Writ of Habeas Corpus dated March 30, 2006 ("Maerov Decl.") Ex. G.) Accordingly, it is timely under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244(d)(1). Petitioner, by seeking leave to appeal to the New York Court of Appeals, has also fulfilled the exhaustion requirement by citing to the United States Constitution and federal cases in his brief to the Appellate Division. (Maerov Decl. Ex. B.) Thus, the Petitioner gave "the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (citation omitted).

This petition is denied.

**I.      BACKGROUND**

After pleading guilty to the robbery, Petitioner was sentenced on April 9, 1998 to an indeterminate imprisonment term of eight years to life as a persistent felony offender. Petitioner's conviction was affirmed by the Appellate Division, First Department on June 10, 2004, (Maerov Decl. Ex. D), and the New York Court of Appeals denied him leave to appeal on September 21, 2004, (id. Ex. F).

**A.      The Suppression Hearing**[2]

At a suppression hearing held on November 19 and 20 and December 4, 1996, the following facts were adduced from the People's six witnesses.

On August 25, 1995, at about 3:15 a.m., New York Police Officer Joseph Senisi, who was in a patrol van in lower Manhattan, responded to a radio transmission about a robbery at 140 East 14th Street. (Supp. Tr. 6.) When Officer Senisi arrived at the location, a parking lot, he spoke with its manager David Abuttbul, one of the alleged victims. (Id. at 9.) Abuttbul recounted how he had just been robbed of about $3,000 in cash by four black men, and that these men had fled the parking lot in a black Mercedes and had headed South on Third Avenue. (Id. at 6-8.) Officer Senisi decided to canvass south of 14th Street for the suspects and Abuttbul joined him in the marked patrol van. (Id. at 2-8.) Senisi later learned that there was a second complainant, Mark Kosakiewicz, who was also in the parking lot and had required medical attention. (Id. at 8.) During the canvass, Abuttbul told Senisi he recognized the suspects' car, a black Mercedes, parked in a gas station parking area at Bond Street and the Bowery. (Id. at 9-12.)[3] Nearby,

---

[2] Citations to the Wade-Huntley-Mapp suppression hearing transcript will be referred to as "Supp. Tr. _."
[3] The driver of the Mercedes was observed in the vehicle's vicinity. (Supp. Tr. 233-34, 49).

2

Officer Senisi saw three men on the street by the curb. (Id.) Officer Senisi got out of his car and approached the men who had walked behind a white truck on Bond Street. (Id.) Officer Senisi brought the suspects to the police van where Abuttbul positively identified the suspects and they were arrested.[4] (Id. at 12.)

Officer Senisi then handcuffed the men and by radio asked that the second complainant, Mark Kosakiewicz, be brought to the scene. (Id. at 13.)[5] Before Kosakiewicz's arrival, [Petitioner] stated in essence to Abuttbul, who was talking to the police, "get the story straight, tell them you gave us that money." (Id. at 14, 250.) The police conducted a second show-up identification when Kosakiewicz had an opportunity to view the suspects, including Petitioner, as they stood on the sidewalk in front of the gas station (id. at 15-17, 252), next to one another, all rear handcuffed, and near police officers facing Kosakiewicz who was in a police car at the gas station, (id. at 15-17, 84-88, 254). Mr. Kosakiewicz positively identified the three individuals. (Id. at 12, 83, 252-54.) Kosakiewicz's identification of Petitioner was made between five (id. at 253) and fifteen (id. at 15) minutes after the Abuttbul's identification. Petitioner asserts that this second show-up identification was unduly suggestive and should not have been allowed.

### B.     The State Court Ruling

In its decision of June 10, 2004, the Appellate Division, First Department, held that Justice Fried, the judge who held the suppression hearing, had properly denied Petitioner's motion to suppress the show-up identification by complainant Kosakiewicz, the same issue Petitioner is arguing here. In his opinion, Justice Fried had found that

---

[4] $210 in cash was recovered on the ground near the white truck around the time of the arrest. (Supp. Tr. 103, 109.) Smaller amounts were recovered from Petitioner's pants pocket, (id. at 268), and from the pants pocket of one of the other suspects, (id. at 16). $1,308 in cash was recovered from the driver's underwear at the precinct. (Id. at 17.)

[5] Mr. Kosakiewicz was brought to the arrest scene by Officer Portalatin. (Supp. Tr. 214-15.)

3

Officer Senisi was authorized to detain Petitioner and the other defendants based on Abuttbul's statements to Officer Senisi, and that the circumstances surrounding Abuttbul's show-up identification were not unduly suggestive. (Maerov Decl. Ex. A at 9.) Justice Fried also concluded that the second show-up in which Kosakiewicz identified the Petitioner was not suggestive. He reasoned that, after Abuttbul's positive identification, "handcuffing was certainly appropriate and it is reasonable to infer that because they were rear handcuffed the second complainant did not see the cuffs." (Id. Ex. A at 10.) Justice Fried went on to opine that, even if Mr. Kosakiewicz had seen the handcuffs, the show-up was still not unduly suggestive. Moreover, Justice Fried found that both show-ups were "sufficiently connected and contemporaneous in both time and location as to constitute the ordinary and proper completion of an integral police procedure." (Id. Ex. A at 10) (quoting People v. James, 633 N.Y.S. 2d 280 (N.Y. App. Div. 1995) (finding the successive identifications made by police officers at the scene where Defendant was apprehended were admissible). While James had distinguishable facts because the police officers, not lay witnesses, were the individuals identifying the suspects in those cases, Justice Fried pointed out that the principle that identifications are not prohibited per se still applies. (Maerov Decl. Ex. A at 10.)

On January 5, 1998, Petitioner received a negotiated sentence of eight years to life as a persistent violent felony offender after withdrawing his earlier plea of not guilty and pleading guilty to the charge of robbery in the second degree. (Hr'g of Jan. 5, 1998, at 14-31.) Subsequently, on April 9, 1998, the court sentenced Petitioner to the negotiated prison term of eight years to life. The fact that Petitioner pled guilty in this case,

4

however, does not preclude his challenge here where he is contesting the constitutionality of his arrest. See Lefkowitz v. Newsome, 420 U.S. 283, 285 (1975).

## II.   DISCUSSION

### A.   Standard of Review

28 U.S.C. § 2254(a) states that: "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because Petitioner's claims were previously decided on the merits, habeas relief may be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court elaborated upon § 2254(d)(1). First, the Court determined that a state court decision is contrary to the "Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Id. at 405. Second, a state court decision is based on an "unreasonable application" of the "Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply." Id. at 407.  Lastly, there is a presumption of correctness for any determination of a factual issue made by a state court, and Petitioner will have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Relief can be granted pursuant to § 2254(d)(2) "where the state court should have made a finding of fact but neglected to do so," Taylor v. Maddox, 366 F.3d 992, 1000 (2004), where the state court makes factual findings "under a misapprehension as to the correct legal standard," id. at 1001, or where the state court used unreasonable procedures to reach a factual determination, id.  "[T]he presumption of correctness and the clear-and-convincing standard of proof [in § 2254(e)(1)] . . . do not apply to a challenge that is governed by . . . section 2254(d)(2)."  Taylor v. Maddox, 366 F.3d 992, 1000 (2004).

### B.   Show-Up Identifications

Petitioner asserts that he was denied due process under the Fourteenth Amendment because the show-up identification of Petitioner by Kosakiewicz was unduly suggestive.  Petitioner argues that because the second show-up identification occurred after another witness had already identified Petitioner and because Petitioner was arrested, handcuffed, and surrounded by police officers and other handcuffed arrestees, the second show-up identification should be suppressed.  (Petr.'s Mem. 13.)

In order to determine whether this pretrial show-up identification was admissible, the Court must undertake a two-part inquiry.  See Brisco v. Phillips, 376 F. Supp. 2d 306, 312-13 (E.D.N.Y. 2005) (citing three controlling Supreme Court cases: Manson v. Brathwaite, 432 U.S. 98, 116 (1977); Neil v. Biggers, 409 U.S. 188, 198 (1972); and Stovall v. Denno, 388 U.S. 293, 302 (1967)).  The first step involves determining

"whether the pretrial identification procedures unduly or unnecessarily suggested that the defendant was the perpetrator." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). If the court decides the pre-identification procedures were not unnecessarily suggestive, then there is no due process obstacle and the identification is admissible. Id. at 133. If, however, the court finds the procedures were unnecessarily suggestive, then the second step of the inquiry is considered: was the suggestive identification independently reliable? Manson, 432 U.S. at 110-14. While the Supreme Court has condemned the practice of show-up identifications, it has also stated that a "violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it." Stovall, 388 U.S. at 302.

### 1.     Suggestiveness of the Identification

In determining whether a show-up identification is unnecessarily suggestive, courts have looked at a number of factors including whether exigent circumstances existed and whether there were unnecessary words or actions that aggravated the inherent suggestiveness of the identification. In this case, Petitioner argues that there were no exigent circumstances to warrant his show-up identification and there is no reason why, instead, a line-up should not have been conducted. (See Petr.'s Mem. 6.) He states that there was no danger of losing the complainant and therefore exigent circumstances did not exist and the show-up identification was unnecessary. Id. Additionally, the suspects had already been placed under arrest based on Abuttbul's identification, reducing the danger innocent citizens were being mistakenly detained or that the perpetrators were still at large. The Second Circuit, however, has repeatedly held that show-up identifications are useful and has specifically found that "prompt on-the-scene confrontation" is

7

"consistent with good police work." U.S. v. Sanchez, 422 F.2d 1198, 1200 (2d Cir. 1970). Also, "quick identification permits the release of a wrongly detained suspect and allows the police to continue the search for the suspect who may still be at large." Brisco, 376 F. Supp. 2d at 313. For these reasons, among others, courts have "admitted show-ups that are held in close temporal and geographic proximity to the crime." Id.; see U.S. v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992). In this case, the show-up identification, about which Petitioner complains, took place just minutes after the crime occurred at a gas station, about ten to twelve blocks away from the scene of the crime at around 3 a.m. Justice Fried's reliance on the identification's close spatial and temporal proximity to the crime in finding the identification admissible was consistent with prior opinions in this Circuit and was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Additionally, Justice Fried's conclusions are borne out by this Court's examination of the hearing transcript.

Identification evidence will be also rendered inadmissible and suppressed if the words or actions of the police render the display "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." Stovall, 388 U.S. at 302. Petitioner argues that the show-up identification procedure was unnecessarily suggestive because police were present at the time of the identification, Petitioner was handcuffed and displayed next to the other suspects, and that Officer Portalatin, who was instructed to pick up Kosakiewicz at the scene of the robbery, had improperly informed Kosakiewicz, after he stated he could

identify the men who robbed him, that he was going to look at some people whom the police had stopped.[6]

The record contains no evidence that the identifying witness actually saw Petitioner's handcuffs. Petitioner was rear-cuffed along with the other arrestees. Furthermore, as Justice Fried found, even if the witness did see Petitioner's handcuffs, they were incidental to a prompt "on-the-scene identification" and did not "render the pre-trial identification procedure unnecessarily suggestive." United States v. Bautista, 23 F. 3d 726, 730 (2d Cir. 1994), cert. denied, 513 U.S. 862 (1994) (holding that the show-up identification by a confidential informant while the suspects were in handcuffs and illuminated by flashlights was not overly suggestive "[b]ecause the on-the-scene identification was necessary to allow the officers to release the innocent").

Furthermore, with respect to Petitioner's claims that Officer Portalatin had improperly informed Kosakiewicz that he was going to look "at some people whom the police had stopped," (Supp. Tr. 214-15), and that therefore, the show-up identification was unreliable, the Officer's words did not render the identification overly suggestive. See Sanchez, 422 F.2d at 1200 (finding that the "police conduct was reasonable and not overly suggestive" where police asked the witnesses if the suspects were "the guys" during an on-the-scene identification).

---

[6] There is no suggestion in the record, however, that Portalatin or any officer at the scene indicated that Petitioner or any of his co-arrestees had been identified as participants in the robbery. Justice Fried's conclusions of fact were well founded that Abuttbul's identification of Petitioner and other defendants was independent and not, in any way, suggested by the arresting officers, and that Kosakiewicz's identification also was not caused by any suggestions by the arresting officers, Abuttbul, or the officer who transported him to the place of arrest.

9

### 2. Reliability of the Identification

Although, this Court finds that Justice Fried was correct to conclude the show-up identification was not unduly suggestive, it will nonetheless address the reliability of the identification procedure. In <u>Biggers</u>, the Supreme Court wrote the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199. <u>Biggers</u> established that there are five relevant factors in determining the likelihood of misidentification. They "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." <u>Id.</u> at 199-200. Applying these factors and looking at the totality of the circumstances, the show-up identification procedure in question was reliable.

With respect to the first two factors, the record is unclear as to what type of opportunity Kosakiewicz had to view Petitioner when he was robbed and injured, and his degree of attention. Although the details are sparse, Kosakiewicz answered affirmatively when the police asked him whether he would be able to make an identification of the persons who robbed him. (Supp. Tr. 245.) Kosakiewicz did not testify at the hearing, and therefore there is nothing in the record as to what angle of view Kosakiewicz had when he viewed Petitioner or his level of attention at that moment. The third factor, the accuracy of prior description to the police, is also not a significant consideration in analyzing the reliability of the identification in this instance since Kosakiewicz did not provide that description.

The fourth factor to consider is the level of certainty during the confrontation. Again, there are few details surrounding Kosakiewicz's level of certainty during the confrontation. Officer Portalatin testified that Kosakiewicz stated he could identify the people who did this to him. (Supp. Tr. 245.) Officer Senisi testified that Kosakiewicz stated Petitioner and the other three suspects were "the guys that committed the robbery in his parking lot." (Id. at 254:23-25.) There is no evidence that Kosakiewicz was uncertain about whether Petitioner was in fact one of the men involved in the confrontation. Although Petitioner argues that having been driven to the scene by a police officer who stated that they are going to look "at some people the police had stopped" created a risk that Kosakiewicz was going to identify Petitioner, whether he recognized him or not, there is no evidence to support that conclusion. The police officer's statement does not raise such doubts about the independence of Kosakiewicz's identification of Petitioner.

The final factor, the time between the crime and the confrontation, indicates reliability because the show-up identification was held in close temporal and geographic proximity to the robbery. Kosakiewicz identified Petitioner and the other suspects in the robbery only approximately twenty minutes after the police received the first report of the crime.[7] See, e.g., U.S. v. Butler, 970 F.2d 1021 (holding that a show-up identification was admissible where half an hour had passed between the robbery and the time the victim identified the suspects). Thus, there is no indication that Kosakiewicz's memory of the perpetrators' appearances had faded.

---

[7] The police received the first report of the robbery at 3:15 a.m., and the show-up identification by Kosakiewicz occurred around 3:35 a.m. (Supp. Tr. 6.)

11

Evaluating the totality of the circumstances and all the above-mentioned factors, the Court concludes that the show-up identification was reliable and not unnecessarily suggestive. Justice Fried and the Appellate Division reasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in concluding that the identification was admissible.

Finally, with respect to Petitioner's claim under 28 U.S.C. § 2254(d)(2) that the state court failed to develop the factual record necessary to make reasonable determinations of Petitioner's claims, no facts were cited to support this contention. Justice Fried held an adversarial suppression hearing over three days, in which Petitioner's counsel and other counsel had the opportunity to cross examine the People's witnesses and did so. Therefore, the presumption of correctness applies. 28 U.S.C. § 2254(e)(1).

## III. CONCLUSION

For the foregoing reasons, Petitioner's 28 U.S.C. § 2254 petition is denied.

IT IS SO ORDERED.

Dated: New York, New York
April 6, 2007

Robert P. Patterson, Jr.
U.S.D.J.

*Copies of this Opinion and Order sent to*:

For <u>Pro</u> <u>Se</u> Petitioner:

Grant Williams
98A2077
Correctional Facility
P.O. Box 4000
Stormville, NY 12582

For Respondent:

Eliot Spitzer
Attorney General of the State of New York
Attn: Luke Martland, Michelle Maerov
120 Broadway
New York, NY 10271
Phone: (212) 587-4112